UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>MARK S. SCOTT,<br><br>      Defendant. | No. S6 17 Cr. 630 (ER) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO SUPPRESS PORTION OF POST-ARREST STATEMENT FOLLOWING
REQUEST FOR COUNSEL</u>**

Arlo Devlin-Brown
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1046

*Counsel for Mr. Scott*

**PRELIMINARY STATEMENT**

Mr. Scott's second request for counsel – "if we get this detailed, then I really should should umm get a lawyer involved" – was not, as the Government would have it, mere musing about potential future questions, but an unambiguous request for an attorney based on detailed questions the agents were asking *right then*. The agents clearly understood it just this way, halting their questioning for nearly a minute after Mr. Scott explained the reason for getting a "lawyer involved" was because he did not "want to say anything wrong." Indeed, Mr. Scott's second request followed a request 13 minutes earlier to call a lawyer, that the agents had simply ignored. Ultimately, the Government ignores the broader picture: the agents, aware from the outset that Mr. Scott was only willing to talk a "little bit" without counsel, falsely assured Mr. Scott that they would let him call a lawyer "in a few minutes" when he first asked for counsel, and then ignored his second request to "get a lawyer involved," resuming questioning a minute later. At a minimum, the questioning should have stopped at this second request for counsel.

**ARGUMENT**

**1. Mr. Scott's Motion Is Not Untimely**

As an initial matter, Mr. Scott's motion is not "untimely and . . . therefore waived." *See* Govt. Brief at 5. The Government's claim that Mr. Scott has been delinquent is indeed rather audacious given the history leading up to this filing that the Government omitted from its protestations about timeliness. The full recording of Mr. Scott's post-arrest statement was made available to Mr. Scott informally via e-mail on September 12, 2018, with a note that the statement was "in its un-redacted form and has been reviewed by members of the privilege review/taint team only." *See* Exhibit A, attached. A September 21, 2018 discovery letter stated in a footnote "that the taint team had found certain portions of the interrogation to be deemed privileged" and had

1

therefore provided a *different*, "redacted version of the statement to the prosecution team." See Exhibit B, attached. The redacted recording produced to the prosecution – the only one that they possessed and could then have intended to play at trial – *was never produced to the defense at all*. In fact, the prosecution team did not "notify the defendant of its intent to use" the prosecution team's version of the recording of his post-arrest statement as required under Rule 12(b)(4) until counsel specifically asked the Government on September 10, 2019.[1] That is not the end. The Government did not produce the *Miranda* form filed as Exhibit B to its opposition until September 17, 2019. And it did not produce the clearly discoverable "transcribe[d] notes" that Agent Eckel recorded "in his interview notebook," Govt. Brief at 10, until September 30, 2019, after filing its opposition to Mr. Scott's motion.[2]

    Mr. Scott did not raise these lapses in his opening brief because they have nothing to do with the merits of the motion, and because these innocent mistakes were promptly and professionally corrected by the Government. But given the Government's argument that the Court should reject Mr. Scott's motion as waived, these discovery shortcomings must be brought to the Court's attention. In any event, there is more than adequate time for the Court to decide this motion – which does not require a hearing – on the merits.

---

[1] In advance of filing the motion the defense informed the Government that Mr. Scott would not assert any privilege with respect to any portion of the interrogation and asked the privilege review team to provide the recording in its entirety to the prosecution team.

[2] *See* Fed. R. Crim. Pro. 16(a)(1)(B)(ii), requiring the disclosure of "the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent."

### 2. Mr. Scott's Second Invocation Was Far From Hypothetical, And Should Have Ended Questioning

At 8:12:57, following a series of specific questions about a particular transaction, Mr. Scott stated, "if we get this detailed, then I really should … get a lawyer involved."  Given that the Second Circuit has unequivocally held that "I think I should get a lawyer involved" should end interrogation, the Government resorts to linguistic gymnastics, positing that "[Mr.] Scott's statement was framed as a hypothetical that referenced something that *might* happen, at which point Scott might then want a lawyer." Govt. Opp. Br. at p. 9 (emphasis in original).

The Government's formalistic construction ignores the context entirely.  Far from being a "hypothetical that references something that might happen," Mr. Scott's "if…then…" statement concretely referenced the line of questioning that the agents *had already just pursued*.  Mr. Scott was not musing about imaginary lines of questioning that the agents *might* pursue at a later point in the interrogation which *might* then make him want a lawyer in the future.  Rather, he was referencing the series of increasingly specific questions relating to an entity called "Cryptoreal" that the agents were just then asking about when he interjected so the questions would stop.  As Scott told the agents: he "[didn't] remember" and "[didn't] want to say anything wrong," 8:12:57.

The fallacy of the Government's claim that Mr. Scott was merely speaking in hypotheticals is best proven by the reaction of the agents, who stopped dead in their tracks the moment Mr. Scott made this request.  The Government's retort that Agent Eckel only "briefly paused," Govt. Br. at 10, is quite a stretch.  Neither agent said a word after Mr. Scott's invocation for 57 seconds after.  The Government's sporting attempt at a lively play-by-play of which agent was shuffling what paperwork in that awkward minute of silence doesn't make the break in questioning any shorter.

The Government comes close to abandoning its strained argument that Mr. Scott was speaking about contingent future possibilities by defending the further questioning on the grounds

3

that the agents "did not ask Scott any additional questions about the Cryptoreal Transactions" that had prompted him to ask for a lawyer. *See* Govt. Br. at 10. But that is not how *Miranda* works. If a particular line of questioning causes a defendant in custody to seek counsel so "I don't say anything wrong," that doesn't mean the interrogation can continue on other subjects. *See Davis v. United States*, 512 U.S. 452, 458 (1994) ("[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been available or the suspect himself reinitiates conversation."); *Wood v. Ercole*, 644 F.3d 83, 90 (2d. Cir. 2011).

The Government's final argument that Mr. Scott's second invocation was unclear is particularly disingenuous. The Government claims that unlike his second invocation, Mr. Scott's third request for counsel was much more precise: "I'd like to have a lawyer." *See* Govt. Opp. Br. at page 9, n 2. But that selective quotation as the Government makes its argument is misleading. What Mr. Scott actually said was: "Yeah, I would love to discuss *this further*. I really would. But I'd like to have a lawyer help me *with that.*" 8:32:49 (emphasis added). Mr. Scott's comments do not come in response to substantive questioning at all. The "this" that Mr. Scott would have loved to "discuss further" was the offer the agents made to Mr. Scott immediately prior to his response: "work with us, ok, and provide us information, and to help yourself and your family, and to help yourself, umm, possibly receive a reduced sentence, possibly work for us, possibly." *See* Govt. Exhibit A. Mr. Scott does not – as the Government's truncated quote would have it – state he would "like to have a lawyer" period, but that he would "like to have a lawyer help me with *that,"* a reference to his opportunity to cooperate. Understood this way, Mr. Scott's third invocation is, if anything, *less* clear than his second, and might have been understood as a request to have counsel address any cooperation, but also a continued willingness to answer the agents' substantive questions. That the agents finally stopped after Mr. Scott asked for a lawyer a third time says more

4

about the fact that they were done with their questions and had moved on to pitch cooperation than it does about their supposed understanding of or respect for his prior requests to speak with counsel.

Additionally, the Government ignores that Mr. Scott's second request for counsel came after the agents had assured Mr. Scott that they would promptly permit him to call counsel, and then failed to do so. At 7:59:22, Mr. Scott stated he had a "few law firms" and that there was "one in particular he would call" where the "litigators at least" would "know somebody."[3] The agents did not, as the Government asserts in its motion, vaguely inform Scott that "he would be permitted to make this call *later*." *See* Govt. Opp. Br. at p. 4 ¶1 (emphasis added). Rather, Agent Eckel told Mr. Scott, "we'll definitely take care of that *in a few minutes*," and followed up with, "[o]ne second, just hold- hang tight," as he and Special Agent Fata left the room. 8:00:11. Yet, a few minutes came and went, and when the agents returned to the interrogation room approximately six-and-a-half minutes later, they continued with their interview. 8:07:12. When Mr. Scott interrupted the questioning nearly six minutes later to again request a lawyer, making clear that he was worried that without counsel he would say "something wrong," the interrogation should certainly have ceased.

---

[3] The Government mischaracterizes this as a request to call "a civil law firm to ask the civil attorneys if they had recommendations for a criminal attorney who could appear at [Mr.] Scott's bail proceeding later that day." Govt. Opp. Br. at 7. Mr. Scott did not say he wanted to call a "civil law firm" and in fact the firm he called had a criminal lawyer, Peter Ball, who Mr. Scott had spoken to (though not engaged) before, and who represented him at arraignment.

## CONCLUSION

For the reasons set forth above, the statements made by Mr. Scott after his first invocation – and certainly after his second – should be suppressed.

Dated: October 1, 2019

by: /s/ Arlo Devlin-Brown

Arlo Devlin-Brown
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
adevlin-brown@cov.com
Tel: (212) 841-1046

*Counsel for Mr. Scott*
